CLAUDE McDOWELL, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

149 So. 53.
Division B.
Opinion filed June 6, 1933.

*Ray Selden,* for Plaintiff in Error;

*Cary D. Landis, Attorney General,* and *Roy Campbell,* Assistant Attorney General, for Defendant in Error.

BUFORD, J.—The plaintiff in error was convicted in the Circuit Court of Volusia County on indictment charging

him with the crime of rape. The verdict of the jury was "guilty as charged with recommendation to mercy."

There is not only ample but fulsome evidence to sustain the verdict of guilt and but little, if anything, to warrant the recommendation to mercy.

The indictment was returned on May 13th charging the crime to have been committed on May 10th. Counsel was appointed on May 16th. The defendant was arraigned on May 17th and trial began on the same day.

There was a motion to quash the indictment which was without merit, a motion for change of venue, which in no wise met the rule and a motion for continuance upon the ground that the defendant had not had time or opportunity to prepare his defense.

Subsequent events during the progress of the trial showed that in this particular case no harmful error was committed by denying the motion for a continuance or a postponement of the trial. The defendant took the stand in his own behalf and denied the commission of none of the essential elements of the crime charged against him. His only defense was that he voluntarily drank liquor and beer to such an extent that his mind became an absolute blank, while he was drinking at a place where the same was served, and remained so until after the crime was alleged to have been committed when he was running from the people who captured him immediately after his return with his alleged victim to the home of her mother, at which place the record shows he jumped out of an automobile and ran.

The entire record discloses that while he was drinking he was not so drunk as for intoxication to interfere with his conduct or movements. That he committed the crime alleged is established beyond question and it is not remotely probable that the defense which he made, which after all was no defense, could have been made stronger or any

more to his advantage by any delay. In fact, the record discloses, as hereinbefore intimated, that he was indeed fortunate in being tried by a jury which found some excuse to recommend him to the mercy of the court which reduced the punishment from possibly death to life imprisonment.

The judgment should be affirmed and it is so ordered. Affirmed.

WHITFIELD and TERRELL, J. J., concur.

ELLIS, J., concurs in conclusion.

DAVIS, C. J., and BROWN, J., dissent.

DAVIS, C. J. (Dissenting).—On the 13th day of May, 1932, plaintiff in error, Claude McDowell, was indicted for the crime of rape alleged to have been committed on May 10th, 1932, on a 14-year-old girl who had gone out riding with him in an automobile. He was unable to employ counsel so the court appointed Hon. Ray Selden, a member of the Volusia County Bar, to prepare his defense.

Counsel for defendant, appointed less than 24 hours before the trial, acting as such only because of his appointment by the trial judge, with commendable zeal for the obligations of his profession as an attorney at law, took his judicially appointed task seriously, and set about to make on behalf of the accused, something more than the purely formal representation as defendant's counsel, which sometimes follows in cases like this. He filed a motion to quash as well as a demurrer to the indictment in the case, and then a petition for change of venue. The petition for a change of venue set forth that it would be impossible at that time, because of the ire aroused amongst the people of Volusia County by the report of the defendant's alleged crime, to have selected a fair and impartial jury to try the defendant. The petition for change of venue set up further the fact that defendant was without friends or relatives in

Volusia County whereas the girl he was charged with having raped, had lived there with her family a number of years. The petition was sworn to by the defendant personally and a certificate of good faith executed by counsel attached. Although not one word of counter-vailing proof against the truth of its allegations was offered by the State, so far as the record shows, the petition was nevertheless overruled, as was the motion to quash and the defendant's demurrer to the indictment.

On May 17th, 1932, just seven days after the date of the alleged commission of the rape charged, defendant, by his counsel, also filed in the trial court his motion for a continuance of the case for a sufficient time to prepare his defense.

That motion was in writing and positively averred under the oath of the defendant and the certificate of the attorney appointed by the court to defend the accused, that defendant had not had proper time to adequately prepare his defense; that he had been kept closely confined in the county jail so that it was impossible for him to obtain evidence in his behalf; that he was a total stranger in Volusia County and without friends therein; that he had been unable to communicate with any outside person in order to have friends or any one else investigate his case and assist him in obtaining evidence material to his defense; that his attorney had not had sufficient time to properly prepare his case and that neither defendant nor his attorney had been permitted, since the returning of the indictment against the accused, time sufficient to obtain medical assistance to "prove his innocence" which medical assistance defendant had reason to believe that he could procure if granted further time; that defendant had relatives who resided beyond the limits of the State of Florida, which relatives, to-wit: his father and mother, if appraised of the grave charge preferred

against their son, would likely assist him in his defense; and that defendant had exercised all reasonable diligence in every direction notwithstanding which he was wholly unprepared to go to trial in the cause.

The motion for continuance or postponement was sworn to in positive and unequivocal terms by the defendant himself, and attached to it was a certificate by Mr. Selden, his court-appointed attorney, to the effect that the motion was filed in good faith and not for the sole purpose of delay. Counsel for the accused specially certified as an officer of the court, that those portions of the motion relative to inadequate time for preparing defendant's cause were true.

The State's Attorney did not join issue on the motion for a continuance, nor were any of the positively shown facts stated in the motion in any way denied, directly or indirectly, as being true. No suggestion whatsoever was made to the court, nor did the court undertake to make any judicial finding based on his personal observation or knowledge, or otherwise, that the application for continuance was not being presented in good faith.

On the contrary, the State by submitting to a decision on the uncontradicted, unchallenged and undisputed motion filed, thereby admitted the truth of its allegations for the purpose of having the Court rule on its sufficiency. See Powell v. Alabama, U. S. Sup. Ct. decision hereinafter cited. The motion was denied and defendant excepted. Without apparently a moment's delay thereafter the defendant was forced into the selection of a jury and the trial of the case began. The result was a conviction of rape with recommendation to mercy and a life sentence imposed on the accused consequent thereon.

Assuming that the record as now made (with defendant handicapped as he was by lack of sufficient time to make his defense), shows on the present appeal the overwhelming

proof of guilt that the State says it does, I am unable to reconcile the previous decisions of this Court, nor the decision of the Supreme Court of the United States in the now famous Scottsboro, Alabama, rape convictions (Powell v. State of Alabama, 287 U. S. 45, 53 Sup. Ct. Rep. 55, 77 L. Ed. 158, with the idea that a conviction in a serious felony case can in any case whatsoever be affirmed by an appellate court on the theory that, while the trial court may have, in law, denied to defendant his constitutional right as an accused, to a "fair and impartial trial," and may have thereby technically deprived him of his liberty through a denial of "due process of law," that such an unconstitutional procedure can, when the evidence of guilt appearing in a bill of exceptions appears to be satisfactory, be condoned and disregarded as "harmless" error.

The Supreme Court of the United States in direct negation of any such theory, reversed and sent back to the Courts of Alabama for a new trial, the now notorious Scottsboro rape convictions of seven negroes. And this was done by that Court although the record in that case showed by the clearest and most positive proof that the convicted defendants were guilty of the rape charged by the State in that case. In the Scottsboro case also, the evidence was decidedly more conclusive of guilt than is shown with reference to this plaintiff in error. Yet the United States Supreme Court disregarded the "harmless error" idea and predicated its ruling granting a new trial in the Scottsboro case solely on the Federal constitutional ground that "due process of law" contemplates, and mandatorily requires, something more than a mere *form* of judicial proceeding precedent to condemnation, whether the defendants be actually guilty or not, and held that such right would, in every case, be enforced to the letter of the organic law.

Thus, the holding of the case of Powell v. State of

Alabama, *supra,* is that, under the Constitution of the United States and the Fourteenth Amendment thereto, defendants in criminal cases, whether innocent or guilty as a matter of fact, must, as a matter of constitutional right, be given a fair trial, impartial and "deliberate" trial, accompanied by the right to the services of counsel chosen by the accused and permitted to carry out his representation with the accustomed incidents of consultation and "opportunity of preparation" for trial. Powell v. State of Alabama, *supra.*

The previous decisions of this court have every one of them been in substance to the same effect. I am unable to reconcile on the ground of "harmless error" any of our own previous decisions regarding the constitutional right of an accused charged with a capital crime to have ample opportunity to prepare his defense, with the idea that judgment rendered in this case can be affirmed without specifically overruling every one of the prior cases that have required a decision of the same point. See: Coker v. State, 82 Fla. 5, 89 Sou. Rep. 222; Anderson v. State, 92 Fla. 447, 110 Sou. Rep. 250; Christie v. State, 94 Fla. 469, 114 Sou. Rep. 450; Scott v. State, 101 Fla. 250, 134 Sou. Rep. 50.

In the last cited case, Scott v. State, which was decided just two years ago, this Court unequivocally held in the second syllabus to that opinion (134 Sou. Rep. 50):

"Where a person charged with crime makes timely application for a reasonable time in which to prepare for his defense, *and no showing to the contrary is made,* it is error for the court to deny such application to some reasonable degree." (Italics mine.)

The case now before us is exactly within the rule just stated. The motion filed by the defendant prayed for a

"continuance in said cause until the next regular term of the Circuit Court *or a reasonable postponement."*

The application was timely made, because it was made on May 17, 1932, just four days after the indictment was returned and just seven days after the date of the alleged crime was committed. The motion and its allegations were overruled by the court in the face of *no showing to the contrary being made, or attempted to be made by the State, or otherwise appearing in the record.* Not the slightest suspicion exists that the counsel who certified to the good faith of the application was in anywise trifling with the court. Denial in *toto* of the continuance applied for, and the refusal of the court to grant even a postponement "to some reasonable degree" in response to defendant's application for it, cannot be held to be other than reversible error *per se,* if the case of Scott v. State, *supra,* is still to be considered the law of this jurisdiction on the subject.

. The Constitution of this State and of the United States is something more than an esoteric charter of human liberty, to be given expression as a ground for reversing a criminal case only when the record made to support a criminal conviction shows that the evidence of guilt in that particular case is flimsy.

The allowance to an accused person, whether guilty or innocent, and regardless of the heinousness of his crime, of a reasonable time to prepare for his trial on a felony charge is a part of our constitutionally required "due process of law." The right is one which comes into existence *at the very moment the accusation is made in a judicial forum having jurisdiction to award a sentence of conviction.*

The protection of the Constitution stands at the threshold of every criminal trial, and when a defendant is erroneously denied the benefit of his constitutional rights, it is ground for setting aside a judgment of conviction against

him, no matter, how guilty the transcript brought here on appeal may show that the defendant was otherwise proven to be *on the record.*

. It appears to me that in these troublous times when the people and their tribunals of government are becoming more and more impatient of being required to any longer observe the ancient forms of constitutional procedure,—when even the courts themselves are now being boldly asked to "waive the rules" and advance to final passage to the penitentiary and the electric chair those merely accused of crimes when the heinousness of the accusation made against an accused had led to public hysteria and aroused community indignation, we may well contemplate anew that immortal declaration of the Supreme Court of the United States rendered in a similar period of hysteria growing out of internecine war, in the case of *Ex parte* Milligan (4 Wall [U. S.] 2, text 119, 18 L. Ed. 281). In that case, the Supreme Court of the United States, when it was called on to decide a similar question to what we have involved here, uttered this imperishable declaration of constitutional liberty:

"No graver question was ever considered by this Court, nor one which more nearly concerns the rights of the whole people; for it is in the birthright of every American citizen when charged with crime, to be tried and punished *according to law. The power of punishment is, alone through the means which the laws have provided for that purpose,* and if they are ineffectual, there is an immunity from punishment, no matter how great an offender the individual may be, or how much his crimes may have shocked the sense of justice of the country, or endangered its safety. By the protection of the law, human rights are secured; withdraw that protection and they are at the mercy of wicked rulers, or the clamor of an excited people." (Italics mine.)

Confessing as true, that the present record made without adequate opportunity to defend, may show the guilt of the plaintiff in error of the crime of rape to have been established as charged against him, I find myself wholly unable to concur in the affirmance of the judgment when it is likewise made to appear just as clearly that the judgment was not arrived at by a constitutionally required form of trial necessary to constitute "due process of law." I therefore dissent.

BROWN, J. (Concurring).—I concur in the conclusion reached by Mr. Chief Justice DAVIS. It will be observed that counsel was appointed for the defendant less than 24 hours before the trial. My views on this general question were expressed in Reed v. State, 94 Fla. 32, 46-7, 113 So. 630-636.

ELLIS, J. (Concurring).—I agree to the conclusion reached by Mr. Justice BUFORD. I do not agree with Mr. Chief Justice DAVIS in the major premise of his dissenting opinion, which is in substance that the constitutional right to an opportunity for preparing one's defense in a capital case is violated *ipso facto* when the accused is put on trial seven days after the commission of the alleged offense, or four days after the indictment was returned.

I think the cases cited in his opinion do not support the proposition.

In Scott v. State, 101 Fla. 250, 134 Sou. Rep. 50, the indictment was returned at 2 o'clock P. M. on September 9, 1930, and the defendant was arraigned at 9 o'clock A. M. on September 10, 1930, and the trial was set for September 12, 1930. The crime was alleged to have been committed in Gulf County, the accused was confined in the Bay County jail, and his attorneys, whom he had employed, resided in Jackson County at Marianna, sixty miles away. The court said in its opinion that it did "not take the position that one

charged with crime, capital or otherwise, may not be tried promptly after the indictment is presented." The court merely held that in the circumstances of that case the time which the accused had in which to prepare his defense was not reasonable.

In the case of Cristie v. State, 94 Fla. 469, 114 Sou. Rep. 450, the crime was alleged to have been committed in Orange County on October 15, 1926, the accused was arrested the same day, lodged in jail, and on October 18th was removed to the jail in Hillsborough County. He had engaged counsel in Orange County. He was returned to Orange County on the afternoon of October 30th and placed on trial November 1, 1926, on which day he was first arraigned. He was a stranger in Orange County and he relied upon evidence to show the character of himself and the prosecutrix to support his defense of consent. The difficulty of procuring the evidence both as to the character of the accused, who was a stranger, and the character of the prosecutrix, who had lived in many different places in three different States within six years, was twenty-four years old and had lived in Orlando one year, and the inconvenience counsel were put to in consulting with the accused, were the circumstances which the court deemed sufficient to require a longer time than two days after the return of the indictment in which to prepare for the defense.

In the case of Anderson v. State, 92 Fla. 477, 110 Sou. Rep. 250, the State relied upon circumstantial evidence solely to support the charge. The indictment was presented on May 11th, the accused was arraigned on the 12th day of May, and the trial was set for the 19th of the same month. The defense in that case was that there was a third party in the automobile which the deceased drove. The name of such third party was given. The driver of the automobile was killed at a point south of Ocala. The machine was

driven that morning from Jacksonville with the accused as a passenger, and, as he claimed, with another person as passenger also. The automobile in its route to the point where the driver was killed passed through Lake City, Gainesville and Ocala. To have established the defense of the accused would have required investigations in Jacksonville, Lake City, Gainesville and Ocala. The court deemed that six days in which to make such investigations was not a reasonable time. The judgment was reversed because certain evidence in behalf of the State was held to be improper over objection by the accused.

In the Coker case, 82 Fla. 5, 89 Sou. Rep. 222, the indictment was returned on December 20, 1920, and immediately upon its presentation in court the accused was required to plead to it and go at once upon trial notwithstanding he had requested a copy of the indictment and had been denied in violation of the Declaration of Rights, Sec. 11, Constitution 1885, at least so the record disclosed. For that error the judgment was reversed.*

I am of the opinion that the circumstances in this case do not bring it within the principle announced in the cases cited.

---

*After that case was decided it was stated by counsel for the State, or persons who were friends of his Honor George W. Whitehurst, Judge of the court in which the cause was tried, that the record did not accurately recite the events as they actually occurred; that Judge Whitehurst, most generally known in the State, as an upright, conscientious and able jurist, had not in fact acted in the manner in which the record made it appear that he did and that the accused did in fact have a copy of the indictment and was allowed reasonable time in which to prepare his defense. This Court, however, was powerless to do aught after its jurisdiction was lost and its decision made on the record as presented.